Thayer, P. J.
The cause of action set forth in the plaintiff’s declaration is certainly one of a very novel character. He alleges that he is a priest of the Roman Catholic Church attached to the diocese of Scranton ; that it was the duty of the defendant as the Roman Catholic bishop of that diocese, under the canons and customs of the church, “to assign the plaintiff to the exercise of his office of priest in said diocesethat the defendant refused so to assign him, by reason of which the plaintiff has been deprived of the means of “obtaining a large sum of money ” to 'the plaintiff’s damage of $4,400.
It is quite plain to us that no right of property and no civil rights are involved in the cause of action set up by the plaintiff in this declaration. ' The duty which it is alleged rested upon the bishop to assign the plaintiff to the exercise of priestly functions, if it existed at all, was clearly a religious duty only, not arising out of any contractual or civil relations between the parties. For its performance or non-performance the defendant was answerable only in foro conscientix, or to his ecclesiastical superiors. As the plaintiff himself states the case it was the exercise of a purely spiritual function, for he says it was a duty which belonged to him as bishop. It was plainly a matter in which he had a right as a bishop in the exercise of a purely ecclesiastical function,, to use his official discretion. In the exercise of that discretion he *523 was answerable only to tbe laws of the church. If for the breach of merely religious duties a man may have an action at law; where is the civil control over the consciences of bishops and pastors of the church to end ? May a man have an action at law against a minister for refusing to baptize him, or for debarring him from the communion? Or for refusing to ordain him? Was it ever heard of before that an action would lie against a bishop or other ecclesiastical authority for not assigning spiritual work to a priest ? Could the Methodist conferences be sued for not assigning a minister to a charge ? Or a Presbytery for not approving a ministerial call and refusing to install the minister? Is it contended by the plaintiff that he had a right to be employed by the bishop, and that his right to be employed was a right of property, of which the defendant has deprived him, and that for this deprivation he is entitled to maintain an action at law ? Following the example of the learned judge who delivered the opinion of the supreme court in Tuigg vs. Sheehan, 5 Outerb. 369, let us test the soundness of this proposition by reversing the position of the parties. Suppose the bishop had assigned the plaintiff to the-exercise of some priestly duty, and he had refused to perform it, could the bishop have sued him in a civil court and recovered damages for his refusal ? Can anything be plainer than that he might not only renounce the duty, but renounce his orders, if he chose, without incurring any civil liability to anyone therefor? Yet mutuality of obligation is the essence of all contracts. If he was not bound civiliter neither was the bishop bound. The relation between a Roman Catholic bishop and a priest of his diocese is not that of employer and employed, hirer and hired; and although by the canons of the church it may be bound to provide for its priests, and although that provision is usually made by the bishop appointing the priest to some spiritual function or duty, this does not constitute a civil obligation on the part of the bishop so to appoint him, nor impose any civil responsibility upon him* whatever. The neglect of a merely religious or ecclesiastical duty cannot be made the subject of an action by persons who allege that they have been injured by such neglect. These we understand to be the principles of Tuigg vs. Sheehan, and without enlarging further upon the subject, we are of opinion that that case rules the present one. W here rights of property or any recognized civil rights are at stake the courts will inquire into and de-. cide upon the proceedings of ecclesiastical bodies or officials, so that the things that are Caesar’s may be rendered to Casar, but in the present .case we are of opinion that the facts set forth in the plaintiff’s declaration do not show that Caesar has any right to intermeddle.
Judgment for defendant on the demurrer. — The Reporter.